THE PEOPLE *ex rel.* Wayne H. Dyer, State's Attorney, Defendant in Error, *vs.* NELLIE CLARK, Plaintiff in Error.

*Opinion filed April 22, 1915—Rehearing denied June 10, 1915.*

1. JUDGMENTS AND DECREES—*decree cannot be vacated, on motion, after the term.* A decree cannot be vacated, on motion, after the term at which it was entered, except for clerical error or matter of form, but must be attacked directly by a bill of review or other approved method or by appeal or writ of error.

2. SAME—*decree without jurisdiction is void.* If a decree be entered by a court which has not acquired jurisdiction to enter the same or has no jurisdiction of the subject matter involved, the decree is void *ab initio* and may be disregarded by the parties but at their peril.

3. SAME—*it is the duty of a party to obey a decree regularly obtained.* Where a decree has been regularly obtained upon due notice it is the duty of the defendant to obey the decree so long as it remains in force.

4. EQUITY—*equity has jurisdiction to abate a nuisance affecting the public welfare.* Where a nuisance affects the public welfare it may be abated in equity upon application of the proper officer, particularly where the ordinary method of prosecution for the criminal offense proves ineffective.

5. NUISANCES—*public nuisances not limited to those enumerated in section 221 of Criminal Code.* It was not intended by the enumeration of public nuisances in section 221 of the Criminal Code to exclude by legislative enactment or by implication all other acts and things which were nuisances at common law.

6. SAME—*court of equity may enjoin as a public nuisance the keeping of a house of ill-fame.* A court of equity, upon a proper·

showing, may enjoin as a public nuisance the keeping of a house of ill-fame, and if the court had jurisdiction of the defendant the latter may be punished for contempt of court if she persists in conducting the house in violation of the injunction.

7. DEFAULT—*default admits sufficiency of all material facts alleged.* Where a decree enjoining the keeping of a house of ill-fame is rendered by default, as is also the judgment convicting the defendant of contempt of court in violating the injunction, neither the decree nor the judgment can be questioned upon the ground of the insufficiency of the evidence.

8. STATUTES—*statutes should be construed with reference to the common law.* Statutes should be construed with reference to the principles of the common law, and it will not be presumed that an innovation thereon was intended further than is specified or clearly to be implied.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kankakee county; the Hon. CHARLES B. CAMP-BELL, Judge, presiding.

T. W. SHIELDS, for plaintiff in error.

WAYNE H. DYER, State's Attorney, and JOHN H. BECK-ERS, for defendant in error.

Mr. JUSTICE WATSON delivered the opinion of the court:

A bill for injunction was filed in the circuit court of Kankakee county on the 23d day of December, 1912, at the October term, 1912, of the circuit court of said county, by the People of the State of Illinois, on the relation of Wayne H. Dyer, State's attorney, against Nellie Clark. The bill, in substance, charged that Nellie Clark was the owner of and occupied lot 12, in block 34, of the original town of Kankakee City, now the city of Kankakee; that she had conducted in the building on said premises a pretended ladies' boarding house, which was, in fact, a house of ill-fame and place for the practice of prostitution and lewd-

ness; that she kept therein a large number of lewd, immoral and depraved women for the purpose of prostitution, and that the said women practiced fornication, and prostituted themselves with men, in large numbers, who frequented said premises for such purposes; that these actions were carried on during each day and night of the week, including Sunday, and that loud and disturbing noises and lewd, obscene and blasphemous language were used by the habitues of said place within the hearing of those living upon the adjoining premises; that this was carried on and done with the knowledge, consent and protection of Nellie Clark; that Nellie Clark herself was a woman of low and vicious instincts and habits and had been a common prostitute for a period of six months past, and had practiced and carried on the business of prostitution in said building and lived with a man in an open state of adultery; that the building on said premises was constructed of brick, two stories in height, and contained a large number of rooms; that the windows were equipped with heavy shutters, calculated to resist the raids of the public officials of the county of Kankakee; that said Nellie Clark, within the last two years, had been arrested on several occasions by the police of the city of Kankakee, charged with keeping and maintaining a house of prostitution, and that on such occasions she had plead guilty but still continued to conduct said house of prostitution; that on account of the maintaining and keeping of said house of prostitution irreparable injury would result to the complainant, in that the moral standard of the citizens of the community had been lowered and contempt for the law and courts engendered, and that said premises had become a place for the congregation of disorderly and undesirable persons, thereby increasing the necessity of police protection and endangering the public health of the community, and that the property of the citizens residing in the vicinity of said building had depreciated in value for residence and business purposes,

and that the said building, and the business as carried on
there, amount to a common nuisance. The bill prayed that
Nellie Clark be required to answer the same but not under
oath; that said house of ill-fame be declared to be illegal
and its keeping and maintenance a public nuisance to the
complainant. There was a prayer for temporary injunction.
The bill was not sworn to.

In support of the bill two affidavits were filed, being
affidavits of Dave Rosenberg and Fred Chapman, which
affidavits disclose the place described in the bill was a pub-
lic place for the practice of prostitution and lewdness.

Upon hearing on bill and affidavits, and upon due notice
to said Nellie Clark, a temporary injunction was granted,
restraining Nellie Clark, and all other persons claiming un-
der any contract, agreement, assignment, lease, bill of sale
or other conveyance made by her, and all persons in privity
with her, and all persons at any time upon the premises,
from using or occupying the same for the keeping or main-
taining of a house of ill-fame and place for the practice of
prostitution and lewdness.

On the 20th day of January, 1913, the same being of
the January term, 1913, of the circuit court of Kankakee
county, Nellie Clark was defaulted and the bill taken against
her as confessed, and the court, on the reading of the bill
and the two affidavits heretofore referred to, and without
hearing any other evidence, entered a decree making the
temporary injunction final and holding the method of con-
ducting the place constituted the same a common nuisance.
At the May term, 1913, an information was filed by the
State's attorney for attachment for contempt for violating
this injunction, setting up, among other things, the filing of
the original bill, the issuance of the temporary writ of in-
junction on the 24th day of December, 1912, and the fact
the temporary injunction was made permanent and a decree
entered enjoining said Nellie Clark from conducting a house
of ill-fame on said premises, on the 20th day of January,

1913, and setting up facts showing a continuation of the same practices and business at the same place by Nellie Clark after the entry of the decree. There was also a prayer for attachment for contempt, and several interrogatories were filed for Nellie Clark to answer. The information was not sworn to, but two affidavits were filed therewith, executed by other two men, supporting substantially the facts set forth in the information. A writ of attachment for contempt was issued. The defendant appeared and demurred to the information, which demurrer was overruled, and the defendant filed an answer, which, not being under oath, was stricken. Defendant was then adjudged to be in contempt and the court imposed a fine of $200 and a sentence of forty-five days in jail. A motion was then filed to vacate the decree and to set aside the sentence imposed for contempt. The motion was overruled and two appeals were taken, one from the order refusing to vacate the decree, the other from the order refusing to set aside the sentence. The cases were consolidated and heard as one in the Appellate Court, and having been brought separately here by writ of *certiorari* they will be consolidated and disposed of as one cause.

The Appellate Court affirmed the action of the circuit court in all respects. By the assignments of error plaintiff in error questions in this court the action of the Appellate Court, and ultimately of the circuit court, both in respect to the injunction decree entered at the January term, 1913, of the circuit court, and in respect to the conviction and sentence for contempt at the May term, 1913, of said court.

It is a primary and well known rule that a decree cannot be vacated, on motion, after the term at which it was entered, except and unless for clerical error or matter of form, but must be attacked directly, if at all, either by bill of review or other approved method. It may, of course, be reviewed on appeal prayed at the term of its entry or by writ

of error taken in apt time. (*Mooney* v. *Valentynovicz,* 255 Ill. 118.) Nevertheless, if such decree be entered by a court which has not acquired jurisdiction to enter the same or has no jurisdiction of the subject matter involved, the decree is void *ab initio* and may be disregarded by the parties sought to be affected thereby, but at their peril. (*People* v. *McWeeney,* 259 Ill. 161; *Toledo, St. Louis and New Orleans Railroad Co.* v. *St. Louis and Ohio River Railroad Co.* 208 id. 623.) It therefore becomes necessary for this court to inquire and determine whether chancery has jurisdiction and authority to decree a bawdy house a public nuisance and to abate the same, and whether such authority, if vested in a court of equity, has been legally exercised in this case.

No appeal being taken from the decree of the January term or other method used for having the same reviewed, we cannot now inquire into the sufficiency of the evidence or the regularity of the proceedings, except so far as may be required to determine the question of jurisdiction of the subject matter, it being conceded there was due notice to the defendant. Until the vacation of the decree so regularly obtained it was the duty of the defendant to obey its mandate. *Franklin Union* v. *People,* 220 Ill. 355.

Plaintiff in error contends a court of equity has no jurisdiction to punish crime, and that is true if punishment of crime is the only object of the proceeding; but the rule is, that where a nuisance affects the public welfare it may be abated in equity on the application of the proper officer, and that a house of ill-fame may be or become a nuisance of that character. This is particularly true where the ordinary method of prosecution for the criminal offense proves ineffective. (9 Am. & Eng. Ency. of Law,—2d ed.—518; 14 Cyc. 484; 29 id. 1166; *Stead* v. *Fortner,* 255 Ill. 468; *Burnett* v. *Tedischi,* 154 Ala. 474; *Barrett* v. *Mt. Greenwood Cemetery Ass'n,* 159 Ill. 385.) At the common law two classes of disorderly houses were nuisances *per se,* being

268 — 11

dram-shops and bawdy houses, the latter because they attract and draw together lewd and debauched persons and tend to disturb the public peace and to increase immorality among the people. (14 Cyc. 484; 9 Am. & Eng. Ency. of Law,—2d ed.—518.)

The jurisdiction of courts of equity to enjoin nuisances is ancient and in case of public nuisances is coincident with the remedy by indictment. The remedy by injunction is based on the ground that courts of equity have ability to give a more complete remedy, operating through future time, than is obtainable by law, and it is a well recognized branch of equity jurisprudence to restrain public nuisances by injunction. *Stead* v. *Fortner, supra,* and authorities there cited.

It is contended by plaintiff in error that the provisions of section 221 of chapter 38 of our statutes, declaring certain specified acts and things to be public nuisances and conferring power upon certain municipal corporations to declare what other acts and things shall be so regarded, "excludes all other nuisances from coming within the class of public nuisances except those which might be subsequently declared by statute to be such." This court has held, in the case of *Roloson* v. *Barnett,* 243 Ill. 130, the statute in question merely declaratory, as to the items mentioned, of the common law, and we now hold it was not intended by the enumeration in section 221 to exclude, by legislative enactment or by implication, all other acts and things which were nuisances at the common law. Section 46 of the Criminal Code prohibits the boycott and the blacklist, and provides the definition of and punishment for certain forms of conspiracy. Section 130 prohibits and provides punishment for option gambling and other forms of forestalling the market in grain and other commodities. But in *Chicago, Wilmington and Vermilion Coal Co.* v. *People,* 214 Ill. 421, these sections were held declaratory of the common law, and it

was held that by their enactment other forms of conspiracy known at the common law were not abrogated and were still cognizable in and might still be dealt with by our courts. Statutes should be construed with reference to the principles of the common law, and it will not be presumed an innovation thereon was intended further than is specified or clearly to be implied. *Cadwallader* v. *Harris,* 76 Ill. 370; *Smith* v. *Laatsch,* 114 id. 271.

At the hearing at the May term of the circuit court plaintiff in error was heard by demurrer, answer and motions and was given opportunity to give evidence in her defense. The court heard and considered not only the affidavits filed in support of the information, but also other evidence, presumably competent, which has not been preserved in the bill of exceptions, in addition to the admission by defendant, in open court, that she could not deny the facts alleged in the information. Finally the judgment of conviction, like the decree in the injunction case, was entered by default. The decree and the contempt order cannot now be questioned on the ground of insufficiency of evidence, the defaults admitting all material facts alleged. *Farnsworth* v. *Strasler,* 12 Ill. 482; *Monarch Brewing Co.* v. *Wolford,* 179 id. 252.

We are of opinion the proceedings were regular and sufficient, the court had jurisdiction, the place complained of is a public nuisance subject to be abated in chancery, and the punishment inflicted for violation of the injunction was a proper exercise of the power of the court in that regard.

The judgment of the Appellate Court is therefore affirmed.                          *Judgment affirmed.*